**Frank McQUEARY, Appellant,**

v.

**Linda Leigh McQUEARY, Appellee.**

No. S–6216.

Supreme Court of Alaska.

Sept. 29, 1995.

Sharon L. Gleason, Law Office of Sharon L. Gleason, Anchorage, for Appellant.

Susan D. Mack, James T. Stanley Corporation, P.C., Anchorage, for Appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

### OPINION

MATTHEWS, Justice.

Frank and Linda McQueary were divorced in 1988. The sole issue arising out of the superior court's division of their property is the valuation of the "Diamond H" ranch, a horse stabling and riding business which the couple co-owned. The ranch was encumbered by a $553,249.44 interest-free debt, payable over twenty-five years in monthly installments of $1,776.00. The superior court found that the market value of the ranch, not including the debt owed on it, was $470,323. This finding is not disputed.

The superior court decided not to reduce the zero-interest debt owed on the ranch to net present value. The court simply subtracted the nominal value of the debt from the $470,323 market value figure and concluded that the ranch had a negative net equity of $115,923.42.

The superior court found that Linda and Frank are both able-bodied and capable of supporting themselves. The court stated that Frank is capable of earning an annual salary of approximately $46,000 per year. The court found that Linda's sole means of

support is the net income from the ranch. The court stated that the income Linda can expect to earn from the ranch is greater than Frank's potential income, and attempted to compensate for this in its division of the couple's property and debt.

The court awarded Linda the ranch and $58,478 worth of other items of property, and ruled that Linda would assume the $553,-249.44 zero-interest loan on the ranch as well as another loan of $24,028.76. The court awarded Frank a $2,000 book collection and required him to pay off a loan of $8,968.22. The court split a collection of art and ivory evenly and the parties were allowed to keep their personal vehicles. Because the court did not reduce the interest-free debt on the ranch to present value, the court considered the net value of the assets and debts awarded to Linda to be negative.

■■■ The superior court's decision not to reduce the zero-interest debt to present value was clearly erroneous. In our previous decisions, we have ruled that proper valuation of marital assets requires the reduction of streams of future payments to present value. *See, e.g., Wainwright v. Wainwright,* 888 P.2d 762, 765–66 (Alaska 1995) (trial court erred by failing to properly calculate present value of future pension benefits). When an asset or investment is valued, both the future income from the asset and the future debt payments on the asset must be reduced to present value.[1]

Under the valuation method used by the superior court in this case, the division of property would have been the same whether the interest rate on the $553,249.44 loan was zero percent, five percent, or fifteen percent. Yet the higher the interest rate, the worse off Linda would have been by assuming the debt. By failing to take the interest rate into account, the superior court improperly valued the ranch.[2]

The superior court's decision not to reduce the zero-interest debt to present value and its finding that the net value of the ranch was negative are REVERSED, and this case is REMANDED for further proceedings. On remand, the superior court should ascertain the net present value of the zero-interest loan and subtract that number from the $470,323 market value figure to arrive at the net value of the ranch. The superior court should use its sound discretion to pick between the various discount rates proposed by the experts of the parties. *Cf. Matson v. Lewis,* 755 P.2d 1126, 1129 (Alaska 1988).[3]

1. Examining a hypothetical will make it easier to understand why the superior court's choice not to reduce the debt to present value was incorrect. Consider two physically identical houses, X and Y, which would each be worth $100,000 if no debt was owed on them. House X is encumbered by a $50,000 mortgage with an interest rate of one percent; house Y is encumbered by a $50,000 mortgage with an interest rate of fifteen percent. Clearly, a buyer would pay much more to purchase house X and assume the mortgage on it than to purchase house Y and assume its mortgage. It would be unjust to treat house X and house Y and the mortgages on them exactly the same way in a division of marital property.

2. In addition, the superior court's finding that the ranch had negative net value contradicts its finding that the ranch produces positive net income. A common way to value investments and assets is by analyzing the income they are expect-

ed to produce. If an investment is expected to generate positive net future lifetime income, it must have positive net present value.

3. Linda argues in her brief that if this case is remanded to the superior court, we should instruct the court to have Frank "reimburse the Ranch for his share of partnership contributions." Since Linda is the appellee, and she did not file a cross-appeal, we will not consider her reimbursement argument. *See, e.g., Jackson v. Nangle,* 677 P.2d 242, 247 n. 3 (Alaska 1984).

Linda also argues that the superior court's division of property should be upheld for several equitable reasons. However, the sole issue before us in this case is the valuation of the ranch. We may not attempt to compensate for the superior court's valuation error by reweighing the equities of the property division. Linda may make her equitable arguments to the superior court on remand.